# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JASON BARBOSA, | ) |
| Petitioner, | ) |
| v. | ) Case No. 18-cv-11503-DJC |
| STEVEN SILVA, | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                                      June 24, 2021

## I. Introduction

Petitioner Jason Barbosa ("Barbosa"), acting *pro se*, has filed a petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254. D. 1. Respondent Steven Silva ("Respondent"), the Superintendent of the Souza Baranowski Correctional Center, opposes the Petition. D. 40. For the reasons set forth below, the Court DENIES the Petition.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), when a petitioner raises a claim that was adjudicated on the merits in state court, federal habeas courts must defer to the state court's determination unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (quoting 28 U.S.C. § 2254(d)). As an initial matter, a petitioner must show that

1

she has exhausted all her state court remedies or, in the alternative, that the state did not offer appropriate corrective measures. 28 U.S.C § 2254(b). To prove exhaustion, Barbosa must demonstrate that she has "fairly and recognizably" presented his claim to the state's highest court, the Supreme Judicial Court in this case. Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000); see Adelson v. DiPaola, 131 F.3d 259, 263 (1st Cir. 1997).

For the purposes of § 2254(d)(1), federal law is defined as Supreme Court holdings and excludes dicta. White v. Woodall, 572 U.S. 415, 419 (2014). "[A]n unreasonable application of federal law" is not the same as "an incorrect application of federal law." Scott v. Gelb, 810 F.3d 94, 101 (1st Cir. 2016) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)). Not even clear error will establish an objectively unreasonable conclusion. White, 572 U.S. at 419. Habeas relief is not warranted if "'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

For the purposes of § 2254(d)(2), any factual determinations made by a state court are "presumed to be correct" unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### III. Relevant Factual and Procedural Background

Unless otherwise noted, the factual background set forth below is drawn from the Supreme Judicial Court's decision affirming Barbosa's conviction. Commonwealth v. Barbosa, 477 Mass. 658 (2017).

### A. Events Leading Up to the Shooting

Anthony Depina ("Depina" or the "victim") and Barbosa grew up together and were once friends. Id. at 661. Their relationship changed when Barbosa, who was affiliated with the Wendover Street gang (with which the victim was also associated), began to associate with members of the Woodward Avenue gang. Id. On December 24, 2011, Barbosa and two other members of the Woodward Avenue gang, Kenneth Lopes ("Lopes") and Manuel Montrond ("Montrond"), were involved in an altercation with several members of the Wendover Street gang, including the gang's leader, at a Boston gas station. Id. at 660. Barbosa and Lopes were both injured during the altercation. Id.

### B. February 23, 2012 Shooting

Two months later, on February 23, 2012, Montrond arrived at a bar in Roxbury, Massachusetts in a rented black Cadillac at approximately 9:30 p.m. Id. The bar, which was in Woodward Avenue gang members' territory, had Wendover Street gang patrons, including Depina. Id. at 661. At the time, Barbosa was on probation and was wearing a global positioning system ("GPS") tracking bracelet. Id. at 660. Minutes after Montrond's arrival at the bar, Lopes alighted from a different vehicle. Id. Montrond signaled Lopes by flashing his headlights twice and then Barbosa, Montrond and Lopes entered the bar. Id. Surveillance cameras, which were approximately four minutes and thirty seconds fast, captured the subsequent events inside the bar, while Barbosa's GPS tracked his coordinates and the involved streets near the bar. Id.

Once inside the bar, Barbosa, Montrond and Lopes socialized with Barbosa's ex-girlfriend and cousin. Id. A few minutes later, Montrond left the bar and waited outside in the Cadillac. Id. Depina, on his way into the bar, walked by and waved at Montrond. Id. When Depina entered the bar with Maria Teixeira ("Teixeira"), just before 10 p.m., Depina greeted Barbosa and walked to

the end of the bar. Id. at 661. Depina and Barbosa left the bar at different times and returned without issue. Id. When Barbosa left the bar and drove around, however, returning to the area around the bar at approximately 10:20 p.m., driving to Woodward Avenue, and then returning to Burrell Street, Barbosa walked towards the bar. Id. Depina and Teixeira had left the bar shortly before 10:30 p.m. and stopped by Depina's home before leaving again. Id. Meanwhile, Barbosa appeared to be searching the area—he walked down Burrell Street, where Depina had parked, and then drove to Albion Street, where Teixeira lived. Id. At approximately 10:45 p.m., Barbosa returned to the area of Burrell Street and Norfolk Avenue, followed by Montrond's Cadillac. Id. Once back inside the bar, Barbosa searched the bar area, pool room, lounge, and bathroom before leaving less than a minute later. Id.

At approximately 11 p.m., Depina and Teixeira returned to the area near the bar, walked over to the car of Joseph Rosa ("Rosa"), another Wendover Street gang member, and spoke with occupants through the passenger-side window while standing on the sidewalk. Id. While the group was talking, Barbosa pulled up, stopped alongside Rosa's vehicle and said something to the effect of "You don't belong here." Id. at 661-62. Rosa and one of the women encouraged Depina to leave, but he refused and returned to the bar with Teixeira. Id. at 662. In the events that followed, Depina smoked a cigarette outside the bar while Teixeira used the restroom therein. Id. As Depina smoked, Barbosa drove past the bar slowly in a black SUV. Id. Depina then pointed at Barbosa, and seconds later, went inside the bar, first to the restroom and then to wait for Teixeira by the bar. Id. When Teixeira returned to the bar from the restroom, Depina told Teixeira that he wanted to leave, though he did not explain why and seemed somewhat "mad." Id. As Teixeira and Depina left the bar and approached his vehicle, headlights from a vehicle up the street flashed four times. Id. Depina then looked down the street, at which point Teixeira heard Depina use

Barbosa's nickname and say, "Are you for real, Little J?" Id. Teixeira then saw someone walking in the middle of the street, though she could not see the individual's face. Id. Then, another individual fired multiple gunshots from the nearby alley and Depina was shot in the head and torso. Id. He died within seconds. Id. at 663.

At or around the time of the shooting, which occurred at approximately 11:10:43 p.m., Barbosa's GPS data showed that at 11:10:05 p.m., Barbosa was on Burrell Street, near Batchelder Street, traveling zero miles per hour, and at 11:10:36 p.m., was on Burrell Street headed toward Norfolk Avenue, traveling two miles per hour. Id. at 662-63. Seconds after the shooting, the black SUV drove down Burrell Street, turned right on Norfolk Avenue and turned another right on Marshfield Street. Id. at 663. At this point, Barbosa's GPS coordinates showed him traveling on Marshfield Street at 38 miles per hour. Id. Minutes after the shoot, Barbosa returned to a house on Woodward Avenue. Id.

### C. Police Investigation and Charge

When police officers arrived at the scene of the shooting, Teixeira was hysterical. Id. During transport to the Boston police headquarters, she stated, "[t]hey're going to kill me for this." Id. At the police station, still very upset, Teixeira said, "I'm going to die for this. I'm going to tell you anyway," and in response to the detective's question of who shot Depina, responded "Little J, Jason." Id.

As part of the investigation, detectives sought to identify and locate the Cadillac that Montrond had rented and the small black SUV that Barbosa was driving the night of the shooting, but the black SUV was never found. Id. at 664. Two days after the shooting, Barbosa and Montrond were stopped by police and the officers seized Barbosa's cellphone. Id. Pursuant to a search warrant, the detectives searched the phone and phone records, which established that

5

approximately two minutes prior to the shooting, Barbosa called one of the leaders of the Woodward Avenue gang, and one minute after the shooting, made a call to another leader of the Woodward Avenue gang. Id. The detectives also found that Barbosa, between 11:13 p.m. and 11:20 p.m., received a call from Lopes, made an outgoing call to Montrond and received another incoming call from Lopes. Id.

### D. Relevant State Court Proceedings

On May 23, 2012, Barbosa was indicted on charges of murder in the first degree and unlawful possession of a firearm as an armed career criminal. Id. at 659; D. 35 at 4. The firearm charge was nolle prosequi before trial. D. 40 at 6. The Commonwealth's theory was that the shooting was committed as part of a joint venture, wherein Barbosa was a knowing participant, either as the shooter or as an accomplice. Id. at 659. After trial that began on December 4, 2013, a jury convicted Barbosa of the first-degree murder charge and he was sentenced to life without the possibility of parole. D. 40 at 6.

On direct appeal to the Supreme Judicial Court, Barbosa challenged his conviction, arguing that: "(1) the Commonwealth presented insufficient evidence to support his conviction as both the shooter and as a knowing participant with shared intent to kill; (2) the judge abused her discretion in admitting prejudicial gang evidence; (3) the prosecutor's opening statement and closing argument were improper; (4) the judge allowed inadmissible statements, which unfairly bolstered the Commonwealth's theory of gang retaliation and allowed improper interpretive testimony; (5) trial counsel provided ineffective assistance of counsel; and (6) the motion judge erroneously denied the defendant's motion to dismiss the indictments." Barbosa, 477 Mass. at 659. The Supreme Judicial Court affirmed the conviction and declined to grant relief pursuant to Mass. Gen. L. c. 278, § 33E. Id.

In deciding the first ground regarding the sufficiency of the evidence, the court concluded that a reasonable jury could have found Barbosa was motivated by anger at the ongoing feud between the Woodward Avenue gang and the Wendover Street gang, especially after the altercation between Barbosa, Lopes, Montrond and members of the Wendover Street gang two months prior to the murder. Id. at 664-65. Conducting its analysis pursuant to Commonwealth v. Zanetti, 454 Mass. 449 (2009), the court furthered that the jury could have reasonably found Barbosa's threat of 'you don't belong here' as evidencing a motivation to kill since Depina, an associate of the Wendover Street gang, was present in Woodward Avenue gang "territory." Id. at 665-66. The court also concluded that the jury could have reasonably found, given surveillance footage, that when Barbosa left the bar, "he began stalking the victim, thus demonstrating his knowing participation and shared intent to commit the premediated murder." Id. Barbosa's flight from the scene less than a minute after the shooting, as well as telephone calls with his suspected coventurers immediately following the shooting and thirty minutes after, were additionally found to permit the reasonable inference of Barbosa's participation in and shared intent to commit the murder. Id. at 667.

As to the opinion testimony, the trial judge had conducted a voir dire to assess the foundation for the opinions of the Commonwealth's gang expert, Detective Martin O'Malley ("O'Malley"), and allowed Barbosa to challenge the admission of same. Id. The court concluded that given O'Malley's extensive experience with Cape Verdean gangs generally, and with Barbosa and the victim specifically, that O'Malley was qualified as an expert and could provide personal knowledge for the testimony he offered. Id. at 667-68. Moreover, the trial judge gave limiting instructions to the jury about the gang opinion testimony, each time such evidence was introduced and again in the final jury charge. Id. at 669. As to Barbosa's arguments regarding the prosecutor's

opening statement and closing argument, the court considered Barbosa's failure to object to either during trial as an indication that such portions now challenged were not unfairly prejudicial in "tone and manner," id. (internal quotation marks omitted), but further concluded that the jury was properly instructed prior to opening statements and in the final charge that the statements were not evidence, id. at 670, and that the prosecutor properly encouraged the jury to use their observations to evaluate the evidence and aid them in reaching a verdict in closing arguments, id. Although the prosecutor's statement reminding the jury that the victim's murder occurred nearly two years prior to the trial and that now was the time for Barbosa to be held accountable "was better left unsaid," the court concluded the statement was not improper. Id. at 670-71. With respect to Barbosa's additional arguments regarding the prosecutor's statements, the court concluded that the prosecutor was entitled to argue inferences from the evidence that were favorable to the Commonwealth's case, id. at 671, and that the prosecutor correctly stated the law of joint venture and the Commonwealth's burden, id.

As to Barbosa's arguments regarding evidentiary rulings, the court concluded Rosa's statements and the statements of one of the women who was with him that night were not improperly admitted, as they were not admitted for their truth and, thus, not hearsay. Id. at 671-72. Teixeira's statements to police were also affirmed as admissible under the excited or spontaneous utterance hearsay exception through the testimony of a police officer, id. at 672, and Detective Brian Black's ("Black") testimony was affirmed as admissible as it assisted the jury in evaluating the evidence and understanding the time discrepancy in surveillance footage, id. at 673. The court furthered that Barbosa was not prejudiced by Black's testimony as Barbosa's own witness gave similar testimony regarding the time discrepancy. Id. at 673-74.

8

Barbosa additionally argued that his trial counsel provided ineffective assistance by failing to present evidence that would have countered the Commonwealth's theory of gang retaliation—specifically, a Boston police memorandum detailing the December 24, 2011 altercation that did not include Depina as a Wendover Street gang associate, the voir dire testimony of Depina's sister that Depina was an "associate" and not a member of the Wendover Street gang, and Barbosa's GPS data and cellular telephone evidence to counter the Commonwealth's argument that he was stalking or searching for the victim. Id. at 674. The court concluded that Barbosa had failed to establish how admission of the police memorandum and testimony from the victim's sister would have countered the Commonwealth's theory of gang retaliation, particularly where the Commonwealth provided evidence Depina was an "associate" of the Wendover Street gang, id. at 675-76, and any evidence Barbosa traveled in the same area prior to seeing the victim at the bar does not counter the reasonable inference that after Barbosa left the bar, having seen the victim, he searched the area for the victim, id. at 675.

As to Barbosa's final argument that the motion judge erred in denying his motion to dismiss the indictment as the Commonwealth had failed to establish probable cause to believe Barbosa committed the murder, the Supreme Judicial Court concluded this argument was without merit. Id. at 675. Specifically, the court concluded that based on the evidence presented to the grand jury, viewed in the light most favorable to the Commonwealth, there was probable cause to believe that Barbosa knowingly participated and shared in the intent to commit premeditated murder. Id. at 676.

### E. This Petition

Barbosa commenced filed the Petition and then moved to stay this action while he attempted to exhaust additional claims in state court. D. 1; D. 2. This Court denied Barbosa's

9

motion to stay. D. 15. On September 3, 2019, this Court granted Respondent's motion to dismiss as to Ground Eight and concluded it would dismiss the other grounds unless Barbosa voluntarily dismissed the claims on exhaustion grounds. D. 25. Subsequently, Barbosa withdrew the unexhausted grounds remaining in his Petition, Grounds Four and Five, D. 26, and the Petition proceeded as to the remaining grounds, Grounds One, Two, Three, Six and Seven. D. 27. The remaining grounds for habeas relief, most involving claims that Barbosa raised in his direct appeal, are as follows: the Commonwealth failed to prove Barbosa's guilt beyond a reasonable doubt (Ground One); the trial judge erred as a matter of law in admitting certain evidence from a gang expert (Ground Two); the prosecutor's opening and closing statements were improper (Ground Three); Barbosa was deprived effective assistance of counsel (Ground Six); and Barbosa was denied a fair trial (Ground Seven). D. 1.

## IV. Discussion

### A. Sufficiency of the Evidence (Ground I)

Barbosa's first ground for a writ of habeas corpus is that the Commonwealth failed to prove Barbosa's guilt beyond a reasonable doubt. D. 35 at 7. He argued to the Supreme Judicial Court that the Commonwealth did not put forward sufficient evidence of the existence of a joint venture to convict him. Barbosa, 477 Mass. at 664. The Supreme Judicial Court rejected this contention. Id. at 667. Barbosa now contends that the Commonwealth failed to prove his guilt beyond a reasonable doubt and that he is therefore entitled to habeas relief. D. 35 at 7-16. He argues there is no evidence putting him in the alley at the time of the shooting and that his GPS shows he was 50 feet away eight seconds after the shooting. Id. at 8. He furthers that even if "it is theoretically possible" that he ran from Burrell Street to the alley within the eight second gap evidenced by the GPS, that this was inadequate for a guilty verdict. Id. He additionally argues that there is no evidence he, Lopes or Montrond were near Depina at the time of the shooting. Id. at 15.

As to a sufficiency of the evidence claim, the relevant test is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." O'Laughlin v. O'Brien, 568 F.3d 287, 299 (1st Cir. 2009) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). A court may not set aside a verdict on sufficiency grounds unless "no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (2011). For reversal on this ground to be warranted, the state court decision must be "objectively unreasonable." Renico v. Lett, 559 U.S. 766, 773 (2010).

Here, even assuming *arguendo* that there is insufficient evidence Barbosa was the shooter, "[o]n a federal habeas review of a state-court conviction that potentially rests on dual theories of guilt, the writ will not issue as long as one of the two theories is adequately supported." Leftwich v. Maloney, 532 F.3d 20, 24 (1st Cir. 2008) (affirming district court's dismissal of defendant's habeas petition on grounds that there was sufficient evidence as to one theory, without adjudicating the sufficiency of the evidence as to the alternate theory). The Commonwealth proceeded against Barbosa under the theory that the shooting was a joint venture, wherein Barbosa was a knowing participant—either as the shooter or as an accomplice. Barbosa, 477 Mass. at 659. To establish Barbosa's guilt as a joint venturer, the Commonwealth had to prove, beyond a reasonable doubt, that Barbosa knowingly participated in the killing with the required intent. Zanetti, 454 Mass. at 467-68. "[C]ircumstantial evidence is sufficient to establish guilt beyond a reasonable doubt," and "[t]o the extent that conflicting inferences may be drawn from the evidence, it is for the jury to decide which version to credit." Commonwealth v. Miranda, 458 Mass. 100, 113 (2010). The circumstantial evidence presented by the Commonwealth—*i.e.*, the ongoing feud between the Woodward Avenue and Wendover Street gangs, Barbosa's threatening statement to Depina on the

11

night of the murder, the surveillance footage and GPS data showing that Barbosa searched the area prior to the killing and Depina's statement "Are you for real, Little J?" moments before the shooting— was sufficient to support Barbosa's guilty verdict. Barbosa, 477 Mass. at 662-63. The GPS data additionally showed Barbosa at the scene at the time of the shooting and Barbosa fleeing immediately after the shooting. Id. In conjunction with Barbosa's telephone records, which reflected that Barbosa, Lopes and Montrond had phone contact in the minutes after the shooting and that Barbosa called a Woodward Avenue gang leader two minutes before the shooting, id. at 664, the evidence presented to the jury was sufficient for a rational trier of fact to have "found the essential elements of the crime beyond a reasonable doubt." Morgan v. Dickhaut, 677 F.3d 39, 47 (1st Cir. 2012). Accordingly, "[b]ecause th[e] theory [under which the defendant was a joint venturer] is adequately supported . . . our analysis ends there." Leftwich, 532 F.3d at 24 n.3; see also Griffin v. United States, 502 U.S. 46, 49 (1991) (noting that general verdict is valid if it is "legally supportable on one of the submitted grounds"). The Supreme Judicial Court reasonably concluded that the Commonwealth presented sufficient evidence that Barbosa was guilty of first-degree murder and habeas relief is not warranted on this ground.

### B. Admission of Gang and Motive Evidence (Ground II)

Barbosa's second ground is that the trial judge abused her discretion in permitting O'Malley to testify as a gang expert. D. 35 at 16. He argued the same to the Supreme Judicial Court, purporting that the trial court erred in allowing the introduction of expert testimony regarding Barbosa's membership in the gang. Barbosa, 477 Mass. 667. The Supreme Judicial Court rejected Barbosa's challenge to the admission of this testimony, reasoning that the testimony, "based on [the expert's] personal knowledge, was admissible." Id. at 668. The court further ruled that evidence of Barbosa's affiliation with the Woodward Avenue gang was probative

of motive and provided necessary context for Barbosa's statement to Depina, id., and noted that the trial judge had taken "precautions to minimize any prejudicial impact of the gang opinion testimony," id. at 669. Barbosa contends the admission of gang expert testimony was erroneous because: (1) certain foundational requirements were not met; (2) there were faulty limiting instructions that endorsed the expert's reliance on inadmissible hearsay; (3) the expert utilized unreliable methodologies; (4) there was an improper admission of Barbosa's refusal to cooperate with police; and (5) there was a substantial risk of a miscarriage of justice created by all of the evidentiary errors taken together. D. 35 at 16-23.

"To be a constitutional violation, a state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." Abrante v. St. Amand, 595 F.3d 11, 19 (1st Cir. 2010) (citation omitted). In arguing that the admission of expert testimony rises to this level, Barbosa points to the fact that the expert had "little formal training on gangs," arguing that O'Malley's "relevant experience predated the shooting by several years." D. 35 at 17. He also argues that O'Malley's testimony was based on inadmissible hearsay, id. at 18, and unreliable methodology, id. at 19. The Supreme Judicial Court concluded, however, that O'Malley's extensive experience with Cape Verdeans gangs generally, and with Barbosa specifically, was sufficient to qualify him as an expert. Barbosa, 477 Mass. at 667-68. The court also noted that O'Malley, as a former lead investigator for the Boston police department and patrolman in Dorchester, "logged countless conversations with Cape Verdean residents," "made determinations of gang affiliation" therefrom, knew Depina since 2005, and was similarly familiar with Barbosa—whom O'Malley had observed wearing Woodward Avenue gang colors and with the Woodward Avenue gang leaders on multiple occasions. Id. at 668. Moreover, although Barbosa argues as to whether O'Malley's statements were inadmissible, lacked foundation or were based on stale

13

personal knowledge, he fails to explain or provide any basis to infer that O'Malley's statements were inflammatory.

Barbosa also claims that the trial judge should not have admitted evidence that Barbosa failed to cooperate with police after the December 24, 2011 altercation. D. 35 at 21. Similarly, Barbosa fails to explain how this alleged evidentiary error so infused the trial with inflammatory prejudice as to render a fair trial impossible, Abrante, 595 F.3d at 19, particularly where the trial judge "cabined properly admitted testimony with limiting instructions, voir dire, and exclusion of any references to prior acts of gang-related violence." Barbosa, 477 Mass. 669. Without more, Barbosa has not met his burden of showing that he is entitled to relief on this claim. See Estelle v. McGuire, 502 U.S. 62, 75 (1991) (concluding "that neither the introduction of the challenged evidence, nor the jury instruction as to its use, so infused the trial with unfairness as to deny due process of law").

### C. Opening Statement and Closing Argument (Ground III)

Barbosa's third ground is that the prosecutor's opening statement and closing argument violated his due process rights. D. 35 at 24. He argued to the Supreme Judicial Court that the prosecutor improperly appealed to the jury's emotions by reminding them that they had seen where the shooter emerged from the alley during the view of the crime scene and by using phrases like "killing team" and "stalking and hunting." Barbosa, 477 Mass. at 669. He also argued that the prosecutor: (1) improperly appealed to the jury's emotions when the prosecutor encouraged the jurors to use their memory of the view to evaluate the evidence; (2) used improperly forceful rhetoric to describe Depina's murder; and (3) engaged in misconduct by asking the jurors to hold Barbosa accountable for his actions. Id. at 670.

14

A prosecutor's improper comments will be held to violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). In assessing whether an improper remark rises to that level, it is necessary to consider "the seriousness of the improper remark, the context in which the statement was made, the court's response or curative instructions, and the effect of the statement on the overall proceeding." Dagley v. Russo, 540 F.3d 8, 17 (1st Cir. 2008).

Here, as an initial matter, this claim is procedurally defaulted, as Barbosa did not object either to the prosecutor's opening statement or closing argument. Barbosa, 477 Mass. at 669. The Supreme Judicial Court noted, however, that even if defense counsel had done so, it would not have mattered, as "the prosecutor's statements were not improper," but rather, "were merely 'enthusiastic rhetoric,'" id., and "did not cross the line between fair and improper argument," id. at 671 (quoting Commonwealth v. Lyons, 426 Mass. 466, 471 (1998)). As in Dagley, the Supreme Judicial Court here reasoned that "to the degree the recitation of the evidence was inflammatory," id. at 670, the jury instruction given prior to the opening statement, and in the final charge, sufficiently mitigated any potential error, such that the alleged improper remarks would not affect the jury's verdict and therefore would not compromise Barbosa's constitutional rights, id. at 669-70. Accordingly, given the curative instructions provided and the presumption that jurors follow the trial court's instructions, United States v. Sampson, 486 F.3d 13, 39 (1st Cir. 2007), the Court does not conclude this ground warrants habeas relief.

### D. Ineffective Assistance of Counsel (Ground VI)

As to Ground 6, Barbosa claims his Sixth Amendment rights were violated by the ineffective assistance of counsel. D. 35 at 29. Specifically, Barbosa argues his counsel was

15

ineffective in failing to offer as evidence: (1) a citywide alert that did not mention Depina as one of the nineteen "active" Wendover gang members; (2) Depina's sister's prior testimony that Depina was not a full-fledged gang member; and (3) GPS and phone evidence showing that Barbosa had driven around the same streets before and after Depina first showed up at the bar. Id. In his appeal, the Supreme Judicial Court disagreed, concluding that the evidence would not have likely influenced the jury's verdict. Barbosa, 477 Mass. at 674.

Where, as here, the Supreme Judicial Court "applies its more favorable 'substantial likelihood of a miscarriage of justice' standard [to evaluate a claim of ineffective assistance of counsel], its decision will not be deemed to be 'contrary to' the Strickland criterion," Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006), but rather, will be viewed as "at least as favorable to [the petitioner] as the federal standard," id. (quoting Mello v. DiPaulo, 295 F.3d 137, 144 (1st Cir. 2002)). To warrant habeas relief under the unreasonable application standard, an ineffective assistance of counsel claim requires Barbosa to demonstrate his "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" United States v. Constant, 814, F.3d 570, 578 (1st Cir. 2016) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)). Under the first prong, Barbosa must show his counsel was "so inferior as to be objectively unreasonable" against the court's "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Bucuvalas v. United States, 98 F.3d 652, 658 (1st Cir. 1996) (citation and internal quotation mark omitted). Under the second prong, reasonable probability means "a probability sufficient to undermine confidence in the outcome." Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996) (quoting Strickland, 466 U.S. at 694).

16

Here, the Supreme Judicial Court's determination that Barbosa was not denied effective assistance of counsel was not contrary to nor was it an unreasonable application of the "substantial likelihood of a miscarriage of justice" standard. In its decision, the Supreme Judicial Court concluded, among other things, that Barbosa had failed to establish how admission of the police alert and Depina's sister's testimony that Depina was not a full-fledged member of the Wendover Street gang would have countered the Commonwealth's gang retaliation theory given the evidence that Depina was an "associate" of the Wendover Street gang and was friends with a leader of that gang. Barbosa, 477 Mass. at 675. Similarly, the court concluded that any evidence Barbosa travelled in the same area prior to seeing Depina at the bar would not have countered the reasonable inference that Barbosa, after leaving the bar and having seen Depina, searched the area for Depina as part of the joint venture. Id. Although Barbosa argues the omitted evidence "would have countered the Commonwealth's version of events," and by so doing, "likely influenced the jury's decision to convict," D. 35 at 29, "[m]ere disagreement with the state court does not allow [federal habeas courts] to grant relief." McNary v. Lemke, 708 F.3d 905, 914 (7th Cir. 2013) (citing Harrington, 562 U.S. at 99-103).

It cannot be said in this case that but for counsel's omission of the underscored evidence that the outcome of the trial would have been different, particularly where, as noted by the Supreme Judicial Court, there was substantial, inculpatory evidence against Barbosa. Accordingly, this Court does not conclude that even if counsel erred in failing to introduce such evidence, Barbosa was prejudiced and his ineffective assistance of counsel ground in the Petition also fails.

E.     **Cumulative Effect of Alleged Errors (Ground VII)**

Barbosa argues that even if the Court does not agree that any individual error warrants habeas relief, "the accumulation of the trial errors discussed," should suffice. D. 35 at 30. The

17

First Circuit has noted that "[a]bsent any particularized error, there can be no cumulative error." Williams v. Drake, 146 F.3d 44, 49 (1st Cir. 1998). For the reasons stated above as to each of Barbosa's claims, none of the alleged errors met the standard required for habeas relief. Accordingly, because "cumulative-error analysis is inappropriate when a party complains of the cumulative effect of non-errors," United States v. Stokes, 124 F.3d 39, 43 (1st Cir. 1997), the Court concludes that Barbosa is not entitled to relief on this alternative ground.

V.      **Conclusion and Certificate of Appealability**

For the reasons stated above, the Court DENIES the Petition. D. 1.

A petitioner may receive a certificate of appealability only if he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a showing is made when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Based upon its analysis of the record and the applicable law, this Court does not, at this time, conclude that "reasonable jurists" could debate this Court's conclusion. Id. Although the Court is not inclined to issue a certificate of appealability at this time, the Court will give Barbosa until **July 24, 2021**, to file a motion for certificate of appealability addressing whether he seeks a certificate of appealability as to any of the grounds in the Petition and making the showing that such is warranted here.

So Ordered.

/s/ Denise J. Casper
United States District Judge